671 S.E.2d 614

**In the Matter of the CARE AND TREATMENT OF John David CANUPP, Appellant.**

**No. 4463.**

Court of Appeals of South Carolina.

Heard Nov. 6, 2008.

Decided Dec. 4, 2008.

Rehearing Denied Jan. 27, 2009.

Appellate Defender Lanelle C. Durant, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Attorney General Deborah R.J. Shupe, Assistant Attorney General Brandy A. Duncan and Assistant Attorney General William M. Blitch, Jr., all of Columbia, for Respondent.

GEATHERS, J.:

The State brought this action under the Sexually Violent Predator Act, S.C.Code Ann. §§ 44–48–10 to –170 (Supp.2007), for a determination that Appellant was a sexually violent predator in need of involuntary civil commitment in a secure facility for long-term control, care, and treatment. A jury found that Appellant was a sexually violent predator, and the circuit court ordered that Appellant be committed to the South Carolina Department of Mental Health. Appellant challenges the commitment order on the ground that the circuit court failed to charge the jury that Appellant had a constitutional right to decline to take the witness stand. We affirm.

## FACTS/PROCEDURAL HISTORY

On June 24, 2002, Appellant pled guilty to one count of committing a lewd act upon a child and was sentenced to fifteen years in prison, suspended upon the service of eight years and five years of probation. While he was in prison, Appellant entered an *Alford* plea to a second count of committing a lewd act upon a child,[1] and, on January 22, 2003, he was sentenced to seven years in prison, to run concurrently with the first sentence. Prior to his release from prison, Appellant was referred for review to determine if there was probable

---

1. *See North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), which discusses the acceptance of a guilty plea from a defendant who maintains his innocence.

cause to believe that he met the definition of a sexually violent predator. The circuit court determined that such probable cause existed and ordered Appellant to submit to an evaluation pursuant to S.C.Code Ann. § 44–48–80. Following the evaluation, the circuit court conducted a jury trial for a final determination of whether Appellant met the definition of a sexually violent predator pursuant to S.C.Code Ann. § 44–48–90.

At trial, the State presented to the jury the indictments and sentencing sheets for Appellant's two convictions for sexually violent offenses. Dr. Pamela Crawford, an expert in general psychiatry and forensic psychiatry, testified about the significance of the two events underlying the convictions. Dr. Crawford expressed the opinion that Appellant met the criteria for a diagnosis of pedophilia and alcohol dependence and that he needed sex offender treatment. She also stated that Appellant presented a significant likelihood of a repeat offense.

Appellant presented the testimony of his stepdaughter and the programs manager for the York County Detention Center. The stepdaughter, who was eleven or twelve years old when Appellant began living with her and her mother, stated that Appellant never acted inappropriately toward her. The York County employee testified that, while Appellant was in prison, he had participated in the Life Skills program and also served as the chaplain's assistant.

After all of the evidence was presented, Appellant's counsel requested the circuit court to charge the jury that Appellant had a right to decline to take the witness stand. The circuit court denied the request. The jury later determined that Appellant was a sexually violent predator, and the circuit court issued an order committing Appellant to the South Carolina Department of Mental Health. This appeal follows.

## ISSUE ON APPEAL

Did the circuit court commit reversible error in refusing to charge the jury that Appellant had a constitutional right to decline to take the witness stand?

## STANDARD OF REVIEW

The circuit court is required to charge only the current and correct law of South Carolina. *McCourt By and Through McCourt v. Abernathy,* 318 S.C. 301, 306, 457 S.E.2d 603, 606 (1995). The law to be charged to the jury is determined by the evidence presented at trial. *State v. Hill,* 315 S.C. 260, 262, 433 S.E.2d 848, 849 (1993).

In reviewing jury charges for error, this Court must consider the circuit courts jury charge as a whole in light of the evidence and issues presented at trial. *Keaton ex rel. Foster v. Greenville Hosp. Sys.,* 334 S.C. 488, 497, 514 S.E.2d 570, 575 (1999). If, as a whole, the charges are reasonably free from error, isolated portions which might be misleading do not constitute reversible error. *Id.* A jury charge is correct if, when the charge is read as a whole, it contains the correct definition and adequately covers the law. *Id.* at 495–96, 514 S.E.2d at 574.

To warrant reversal, a circuit courts refusal to give a requested jury charge must be both erroneous and prejudicial to the defendant. *State v. Patterson,* 367 S.C. 219, 232, 625 S.E.2d 239, 245 (Ct.App.2006).

## LAW/ANALYSIS

Appellant contends that the circuit court erred when it denied counsel's request to instruct the jury that Appellant had a constitutional right to decline to take the witness stand. Appellant specifically argues that, as one subject to proceedings under South Carolina's Sexually Violent Predator Act (the Act), he should have the same constitutional rights as a criminal defendant because the same personal freedom is at stake.[2] Appellant also argues that this omission prejudiced him because there is a reasonable probability that the outcome would have been different if the circuit court had given the requested charge. We disagree.

The Fifth Amendment to the United States Constitution sets forth the right against self-incrimination as follows: "No

---

2. Appellant concedes that the commitment of a sexually violent predator under the Act is civil in nature.

person ... shall be compelled in any criminal case to be a witness against himself...." U.S. Const. amend. V. The South Carolina Constitution also provides for a right against self-incrimination: "[N]or shall any person be compelled in any criminal case to be a witness against himself." S.C. Const. art. I, § 12.

■ Similarly, a witness in a civil action may decline to answer a certain question if there is a reasonable possibility that the answer would provide information that could be used against the witness in a criminal proceeding or would lead to the discovery of such information. *See Grosshuesch v. Cramer*, 377 S.C. 12, 24, 659 S.E.2d 112, 118 (2008); *see also State v. Hook*, 348 S.C. 401, 415, 559 S.E.2d 856, 863 (Ct.App.2001) (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77–78, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973) and stating that the Fifth Amendment "not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings."), *modified on other grounds*, 356 S.C. 421, 590 S.E.2d 25 (2003).

■ Nonetheless, only a criminal defendant has the right to decline to take the witness stand altogether. *See Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976) (citing prevailing rule that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them and holding that permitting an adverse inference to be drawn from an inmate's silence at civil disciplinary proceedings is not, on its face, an invalid practice).

■ While the Act bestows some of the rights normally associated with criminal prosecutions,[3] it is not intended to be

---

3. The Act provides for a probable cause hearing, the assistance of counsel, a jury trial, the right to cross-examine witnesses, and the right to view and copy all petitions and reports in the court file. S.C.Code Ann. § 44–48–80 (Supp.2007). Additionally, the Act adopts the burden of proof required in criminal prosecutions; S.C.Code Ann. § 44–48–100(A) (Supp.2007) requires that a determination of whether one is a

punitive in nature; rather, it sets forth a civil process for the commitment and treatment of sexually violent predators. *In re Matthews,* 345 S.C. 638, 649, 550 S.E.2d 311, 316 (2001) (noting that, in *Kansas v. Hendricks,* 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997), the United States Supreme Court deemed Kansas' Sexually Violent Predator Act, on which the South Carolina Act is modeled, to be a civil, non-punitive scheme);[4] *In re Care and Treatment of Brown v. State,* 372 S.C. 611, 616, 643 S.E.2d 118, 121 (Ct.App.2007). The Act is designed to: (1) meet the special needs of sexually violent predators; (2) address the significant likelihood that they will engage in repeated acts of sexual violence if not treated for their mental conditions; and (3) assess the risks requiring their involuntary civil commitment in a secure facility for long-term control, care, and treatment. *Id.* at 616–617, 643 S.E.2d at 121 (citing S.C.Code Ann. § 44–48–20 (Supp. 2006)).

Appellant has not cited, nor has our research revealed, any South Carolina authority to support his argument that there exists a constitutional right to decline to take the witness stand in a commitment trial under the Act. Notably, existing federal precedent indicates that there exists no such right under the United States Constitution. *See Kansas v. Hendricks,* 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997) (stating that the State may take measures to restrict the freedom of the dangerously mentally ill and that such restriction is a legitimate, non-punitive governmental objective); *Allen v. Illinois,* 478 U.S. 364, 106 S.Ct. 2988, 92 L.Ed.2d 296 (1986) (holding that proceedings under Illinois' Sexually Dangerous Persons Act were not "criminal" within meaning of Fifth Amendment's guarantee against compulsory self-incrimination because commitment to maximum security institution

---

sexually violent predator be made only upon proof beyond a reasonable doubt.

**4.** In *Matthews,* the South Carolina Supreme Court found that the appellant did not effectively distinguish the Kansas Act from South Carolina's Act; therefore, South Carolina's Act violated neither the Double Jeopardy Clause of the United States Constitution nor that of the South Carolina Constitution. *Matthews,* 345 S.C. at 649–51, 550 S.E.2d at 316–17.

that also housed convicts needing psychiatric care did not make conditions of person's confinement amount to "punishment").[5]

■ In any event, the omission of the requested charge did not prejudice Appellant. Even if the circuit court had given the requested charge, the jury had before it overwhelming evidence that Appellant met the statutory definition of a sexually violent predator, which is as follows:

"Sexually violent predator" means a person who:

(a) has been convicted of a sexually violent offense; and

(b) suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment.

S.C.Code Ann. § 44–48–30(1) (Supp.2007).

The evidence presented to the jury shows that Appellant pled guilty to the sexual assault of a seven-year-old girl between 1995 and 1996 and that he also entered an *Alford* plea to the sexual assault of a child under the age of sixteen between the spring of 1995 and the summer of 1996. Dr. Crawford testified about the significance of the two events underlying the convictions. She stated that the events show a pattern of behavior involving sexual contact with prepubescent girls.

Dr. Crawford also gave her observations from her interviews with Appellant. She stated that Appellant's inconsistency in his rendition of the events showed her that he did not appear to be fully accepting responsibility for his actions. Dr. Crawford also indicated that Appellant was sexually aggressive, that he denied that he was sexually attracted to children despite evidence of a series of events, and that he did not believe that he needed sex offender treatment.

---

**5.** *See also* Joan Comparet–Cassani, *A Primer on the Civil Trial of a Sexually Violent Predator,* 37 San Diego L.Rev. 1057, 1109–15 (2000) (examining California's Sexually Violent Predator Act and applicable federal constitutional law).

Dr. Crawford expressed the opinion that Appellant met the criteria for a diagnosis of pedophilia and alcohol dependence and that he needed sex offender treatment. Dr. Crawford explained that pedophilia is typically a life-long behavioral disorder. She also stated that Appellant's pedophilia affects his ability to control his behavior, that he is predisposed to commit future acts of sexual violence, and that he would present a danger to prepubescent children. Dr. Crawford expressed her opinion that Appellant presented a significant likelihood of a repeat offense.

Dr. Crawford acknowledged that approximately one year had elapsed between her interviews with Appellant and the commitment trial, and she qualified her opinions on that basis. However, no expert testimony was offered to assist the jury in determining whether Appellant had received any professional treatment or had made any significant progress during that one-year period. Therefore, the jury was presented with overwhelming evidence that Appellant met the definition of a sexually violent predator.

## CONCLUSION

For the foregoing reasons, the circuit court's refusal to charge the jury that Appellant had a constitutional right to decline to take the witness stand was neither erroneous nor prejudicial. Under the current law, there exists no constitutional right to decline to take the witness stand in a civil proceeding, and it is not disputed that proceedings under the Act are civil in nature. Further, any adverse inference, permissible or impermissible, that the jury might have drawn from Appellant's absence from the witness stand would not be outcome determinative in light of the overwhelming evidence that Appellant met the Act's definition of a sexually violent predator. Accordingly, the circuit court's order is

**AFFIRMED.**

WILLIAMS, J., and PIEPER, J., concur.